UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CURTIS SCHWAB,**<br>**865 Governor Bridge Road**<br>**Davidsonville, MD 21035**<br><br>　　　　**Plaintiff,**<br><br>v.<br><br>**MISSIONSIDE, LLC,**<br>**2030 Eighth Street, N.W.,**<br>**Suite 505, Washington, D.C. 20010**<br><br>　　　　**Defendant.** | Civil Action: _____ |

## COMPLAINT FOR RELIEF

Plaintiff Curtis Schwab ("Schwab"), by his counsel, respectfully seeks relief from this Court and complains as follows against Defendant MissionSide, LLC ("Defendant" or "MissionSide"):

## INTRODUCTION

This is not a complex case. Defendant hired Schwab to serve as its Chief Marketing and Sales Officer pursuant to a fully executed employment agreement that provided a specified bonus amount, deemed due and owing at the time of execution but payable upon termination of his employment. In compliance with his duties and obligations under the employment agreement, Schwab timely notified Defendant of his separation from employment. In spite of the clear and unambiguous terms of the employment agreement, Defendant has breached the agreement and refuses to pay Schwab the due and earned bonus amount.

## PARTIES AND NON-PARTIES

1. Schwab is an individual residing in Maryland.

2. Defendant MissionSide is a Delaware limited liability company with its principal place of business located at 2030 Eighth Street, N.W., Suite 505, Washington, D.C. 20010.

3. Defendant is registered as a foreign corporation with the District of Columbia Department of Consumer and Regulatory Affairs ("DCRA") and may be served through its registered agent, The Glazer Law Firm, P.C., 601 Pennsylvania Avenue, N.W., South Building, 9th Floor, Washington, D.C. 20004, or through its president and chief executive officer, Adam Slagowski, at its principal place of business listed with the DCRA as 2030 8th Street, N.W., #505, Washington, D.C. 20010.

## JURISDICTION

4. This Court has subject matter jurisdiction over the allegations presented herein pursuant to 28 U.S.C. §§ 1332(a)(1) and (c) because Schwab and Defendant are citizens of different States, and the amount in controversy exceeds the sum and value of $75,000, exclusive of interest and costs.

5. This Court may exercise personal jurisdiction over MissionSide pursuant to D.C. Code § 13-334(a) because Defendant is a foreign corporation doing business in and whose principal place of business is located in the District of Columbia.

6. This Court may exercise jurisdiction over this matter pursuant to Section 8 of the Employment Agreement, a valid contract executed by the Parties on July 24, 2019.

## VENUE

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the acts or omissions giving rise to Plaintiff's claim occurred in the District of Columbia, and pursuant to Section 8 of the Employment Agreement.

## FACTUAL ALLEGATIONS

8. On July 24, 2019, Schwab entered into an Employment Agreement with MissionSide to serve as its Chief Marketing and Sales Officer, Business Development. (A true and correct copy of the Employment Agreement is attached hereto as ***Exhibit A***).

9. The term of Schwab's employment extended one (1) year from the Effective Date, defined in the Employment Agreement as July 24, 2019, unless either Schwab or Defendant terminated Schwab's employment earlier in accordance with Paragraph 4 of the Employment Agreement. (*Id.* at ¶ 2).

10. MissionSide provided Schwab with a compensation plan, including salary, incentive compensation, and benefits. (*Id.* at ¶ 3).

11. As part of his compensation and as an incentive for Schwab to become employed by MissionSide, it agreed to provide Schwab with a signing bonus in the amount of $100,000 along with a commitment to pay Schwab's federal and state tax liability on this amount ("the Executive Bonus" or "signing bonus"). (*Id.* at ¶ 3(e)).

12. Specifically, in Paragraph 3(e) of the Employment Agreement, Defendant agreed to provide the following signing bonus to Schwab:

> (e) Executive [Schwab] Bonus. The Executive shall be entitled to and the Company shall pay Executive a bonus of one hundred thousand dollars ($100,000) (the "Executive Bonus"). **The Executive Bonus shall be deemed earned by the Executive as of the Effective Date**, **provided, however, that the Executive Bonus will not be paid until 30 days after the Executive's separation from service**, as such term is used in Section 409A(a)(2)(A)(i) of the Internal Revenue Code and Section 1.409A-1(h) of the U.S Treasury Regulations. The Company further agrees to pay Executive an amount equal to the combined federal and state tax liability incurred by Executive as a result of the Executive Bonus amounts being taxed as ordinary income instead of capital gains rates, as reasonably estimated by the Company.

(*Id.*)(emphasis supplied).

13. As set forth in the opening, introductory paragraph in the Employment Agreement, the "Effective Date" of the Employment Agreement is July 24, 2019, the date when the bonus was <u>earned</u> and became due and owing.

14. Under the terms of the Employment Agreement, Schwab did not receive the signing bonus on the Effective Date of the Employment Agreement.

15. Rather, to help MissionSide with its cashflow, at MissionSide's request, the Parties agreed that MissionSide could pay the Executive Bonus thirty (30) days after Schwab's "separation from service." (*Id.* at ¶ 3(e)).

16. On July 23, 2020, Schwab's employment with MissionSide terminated pursuant to Paragraph 4(g) of the Employment Agreement, titled Expiration of the Term. (*Id.* at ¶ 4(g)).

17. On or about July 23, 2020, and multiple times thereafter in conformity with the Employment Agreement, Schwab notified Defendant that the signing bonus would be due and owing to him within thirty (30) days of his termination, or no later than August 22, 2020.

18. The Employment Agreement provides that if Schwab's employment with Defendant terminates for any reason, "MissionSide shall pay or provide to him any earned but unpaid Salary; accrued but unused PTO; any remaining but unpaid portion of the Executive Bonus; any earned but unpaid Business Incentive Plan payments; and any accrued vested benefits he may have under any benefit plan (together, the "Accrued Benefits") on or before the time required by law but in no event more than thirty (30) days after Executive's termination." (*Id.* at ¶ 5(a)).

19. The Employment Agreement does not render payment of the Executive Bonus contingent on any factor; it was deemed earned on July 24, 2019, and it was payable within thirty (30) days after Schwab notified Defendant that he would be terminating his employment.

4

20. Thirty (30) days have elapsed since Schwab gave notice that he was ending his employment with Defendant, and, despite Schwab's multiple efforts to collect the signing bonus that is due and owing to him, Defendant has failed to pay the signing bonus to Schwab in breach of Paragraphs 3(e) and 5(a) of the Employment Agreement.

21. The Employment Agreement is a "complete agreement," constituting "the entire agreement between the Parties with respect to the subject matter hereof and, upon its effectiveness, shall supersede all prior agreements between the Parties concerning the subject matter of this Agreement." (*Id.* at ¶ 9).

## COUNT I

### Breach of Contract

22. Plaintiff re-alleges and incorporates by reference the allegations in all other paragraphs of this Complaint as though fully set forth herein.

23. Schwab and Defendant fully executed a valid contract between them.

24. Schwab has fulfilled all of his duties and obligations under the Employment Agreement and has complied with all terms therein.

25. Defendant had an obligation to pay Schwab the signing bonus pursuant to the terms of the Employment Agreement.

26. Schwab agreed to become employed by MissionSide in exchange for his compensation, including his signing bonus (Executive Bonus), which was provided as an incentive for Schwab to become employed by MissionSide. (*Id.* at ¶ 3(e)).

27. Pursuant to Paragraph 3(e) of the Employment Agreement, Defendant had the duty to Schwab to provide the signing bonus (Executive Bonus) to him within thirty (30) days after he separated from MissionSide, without any further condition. (*Id.* at ¶ 3(e)). Pursuant to the plain

terms of Paragraph 3(e) of the Employment Agreement, the Executive Bonus was <u>earned</u> by Schwab and became due and owing by Defendant on July 24, 2019.

28.     Pursuant to the plain terms of the Employment Agreement, Schwab agreed that Defendant could pay him this Executive Bonus after Schwab's "separation from service." (*Id.* at ¶ 3(e)).

29.     Pursuant to the plain terms of the Employment Agreement, Defendant agreed to pay the Executive Bonus to Schwab no later than thirty (30) days after Executive's termination. (*Id.* at ¶ 5(a)).

30.     MissionSide also agreed to pay Schwab "an amount equal to the combined federal and state tax liability incurred by Executive [Schwab] as a result of the Executive Bonus amounts being taxed as ordinary income instead of capital gains rates, as reasonably estimated by the Company." (*Id.* at ¶ 3(e)).

31.     Schwab's termination became effective on July 23, 2020, and the Executive Bonus was due to be paid to Schwab by MissionSide no later than August 22, 2020.

32.     Schwab demanded payment of the Executive Bonus when he terminated his employment with Defendant, but Defendant did not pay the Executive Bonus to Schwab within the thirty (30) days required by the Employment Agreement.

33.     Defendant breached the Employment Agreement by failing to pay the Executive Bonus to Schwab and combined federal and state tax liability incurred by Schwab as a result of such Executive Bonus within thirty (30) day of his termination of employment.

34.     As a result of Defendant's breach, Schwab has been damaged in an amount in excess of $135,327.00, reflecting the following:

    a. $100,000 for the Executive Bonus;
    b. $29,327 for federal and state tax liability; and

c. $6,000 for accounting fees in order to file an extension of time to file 2019 taxes due to nonpayment of the Executive Bonus.

d. Pre- and post-judgment interest, costs, attorneys' fees, and such other relief as this Court may deem just and proper.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff Curtis Schwab prays for the following relief:

a. Judgment in Schwab's favor on all claims asserted against Defendant;

b. Monetary damages arising from Defendant's breaches of the Employment Agreement in an amount to be proven at trial for actual and compensatory damages, but not less than $100,000.00 for the Executive Bonus, $29,327.00 for federal and state tax liability, and $6,000.00 for accounting fees;

c. Pre-judgment interest, post-judgment interest, and attorneys' fees and court costs; and

d. Such other relief to Schwab as the Court deems just and proper.


Respectfully Submitted,


/s/ Amy Epstein Gluck
Amy Epstein Gluck (D.C. Bar No. 453525)
FisherBroyles, LLP
1200 G Street, N.W., Suite 800
Washington, D.C. 20005
Tel: (301) 526-1184
Fax: (301) 767-0637
amy.epsteingluck@fisherbroyles.com

Dated: August 26, 2020

7